***NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CIRO ESPOSITO and<br>CONSIGLIA ESPOSITO, his wife<br><br>Plaintiffs,<br><br>v.<br><br>LITTLE EGG HARBOR TOWNSHIP, et al.<br><br>Defendants. | Civil Action No. 08-3725 (FLW)<br><br>**OPINION** |

**WOLFSON, United States District Judge:**

Presently before the Court are three motions. Defendants Little Egg Harbor and Mark Siino (collectively the "Little Egg Harbor Defendants") move for summary judgment, and Defendant Police Officer Eric Nelson ("Nelson") and Defendant Police Officer Kevin Hogan ("Hogan") each separately move for partial summary judgment, but on identical grounds.[1] These motions stem from Plaintiff Cino Esposito's ("Plaintiff" or "Esposito") arrest by Officers Nelson and Hogan in Little Egg Harbor Township on December 28, 2007. Plaintiff brings federal causes of action under 42 U.S.C. § 1983 and parallel state law claims. In particular, Plaintiff alleges that the officers (1) used excessive force in violation of § 1983 and committed assault and battery in violation of state law (Counts One and Seven); (2) falsely arrested and imprisoned Plaintiff in violation of § 1983 and state law (Counts Two and Eight); (3) committed malicious

---

[1] For the sake of convenience, the Court will refer to the motions made by Defendants Nelson and Hogan as one motion. Even though each defendant filed a separate motion, the motions are nearly mirror copies of each other. Also, only Nelson filed a reply. But the arguments presented therein are made on behalf of both defendants and will be considered to be filed on behalf of both Nelson and Hogan.

1

abuse of process in violation of § 1983 and state law (Counts Three and Nine); (4) committed malicious prosecution in violation of § 1983 and state law (Counts Four and Ten); and (5) committed negligent and intentional infliction of emotional distress in violation of state law (Count Eleven).  Plaintiff also alleges that (1) Little Egg Harbor had an unlawful custom, practice, policy, or inadequate training which subjects it to liability under § 1983 (Count Six) and (2) is liable under a state law agency theory for any wrongdoing of Officers Nelson and Hogan (Count Twelve).[2]  Plaintiff has filed an omnibus opposition ("Pl. Opp.") to all parties' motions.

       The Little Egg Harbor Defendants have moved for summary judgment on Counts Six and Twelve, the only counts alleged against them.  Plaintiff does not oppose Little Egg Harbor Defendants' motion.  Pl. Opp., at iii.  Therefore, summary judgment is granted on those counts in favor of the Little Egg Harbor Defendants, and because no counts remain against the Little Egg Harbor Defendants, they will be dismissed from the case.  The remaining defendants, Officers Nelson and Hogan (collectively "Defendants" or "Officers"), move for summary judgment on Counts Two through Four and Seven through Eleven.  Defendants have not moved on Plaintiff's claims for excessive force and assault and battery (Counts One and Seven); those claims will remain.  Plaintiff does not oppose the Defendants' motion with respect to the false arrest and malicious prosecution causes of action (Counts Two, Four, Eight, and Ten); those claims will be dismissed.  Id.  Plaintiff does oppose Defendants' motion with respect to the abuse of process and intentional infliction of emotional distress causes of action (Counts Three, Nine, and Eleven), so it is only those claims that are before the Court today.  For the reasons that follow, Defendants' motion as to Count Three, Nine, and Eleven are granted.

---

[2]  Plaintiff also brings a claim for supervisory liability (Count Five) against "John Does 2 and/or John Does 6-10" and a claim for prospective injunctive relief (Count Thirteen) against all defendants based on the underlying claims.  These counts are not at issue for purposes of the present motions.

2

## I. BACKGROUND

The Court only recounts the facts necessary to resolve Defendants' motion. The following facts are undisputed by the parties unless otherwise indicated. On December 28, 2007, Plaintiff Esposito went to a Rite Aid in Little Egg Harbor Township to pick up medications. Esposito and the pharmacist, Ehan Nhan, had a verbal dispute about Plaintiff's prescriptions. This was at least the second such confrontation between Esposito and Nahn. In response to the altercation, Mr. Nahn called the police. Officers Nelson and Hogan arrived and spoke with Plaintiff and the pharmacist separately and then spoke with everyone together. This interaction was recorded by Rite Aid surveillance. The Defendants then led Plaintiff out of the store, holding his arm, where Plaintiff was then arrested for disorderly conduct and resisting arrest. Plaintiff argues he never resisted, but was needlessly manhandled by the Defendants during his arrest and allegedly suffered significant injuries. Defendants dispute this and argue they acted properly in response to Esposito's angry demeanor and threatening conduct. Plaintiff was tried in Little Egg Harbor Municipal Court and found guilty of resisting arrest, but not guilty of disorderly conduct. Plaintiff appealed to the superior court. Following a trial *de novo*, he was again found guilty of resisting arrest. Plaintiff then filed this action alleging that Defendants violated his constitutional rights and a number of analogous state law claims.

## II. LEGAL STANDARD

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56(c). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a

3

Case 3:08-cv-03725-FLW-TJB   Document 42   Filed 04/27/12   Page 4 of 16 PageID: 448

reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).  For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law."  Kaucher, 455 F.3d at 423.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp., 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Monroe v. Beard, 536 F.3d 198, 206-07 (3d Cir. 2008).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57.  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts."  Id. at 206 (quoting Matsushita, 475 U.S. at 586).  Moreover, the non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial."  Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005).  Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.  In deciding the

merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.

### III. DISCUSSION

#### a. Abuse of Process

"A section 1983 claim for malicious abuse of process lies where prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law." Rose v. Bartle, 871 F.2d 331 (3d Cir. 1989) (internal citations and quotations omitted); Ference v. Twp. of Hamilton, 538 F. Supp. 2d 785, 798 (D.N.J. 2008). In analyzing a § 1983 claim, a court may look to analogous common law torts. See Heck v. Humphrey, 512 U.S. 477, 483 (1994). To prevail on his § 1983 claim and state law claim Plaintiff must prove two elements. Voytko v. Ramada Inn of Atlantic City, 445 F. Supp. 315, 325 (D.N.J. 1978). First, he must show that Defendants had a desire to effect some ulterior, harmful end separate from the legitimate aim of the process. See Heck, 512 U.S. at 486 ("The gravamen of [an abuse of process claim] is not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends."); Ference, 538 F. Supp. 2d at 798 ("To establish such a claim, there must be some proof of a definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of [the] process."). Second, Plaintiff must show Defendants committed some unauthorized or improper act in furtherance of their iniquitous motive. "Consequently, basic to the tort of malicious abuse of process is the requirement that the defendant perform 'further acts' after issuance of process which represent the perversion or abuse of the legitimate purposes of that process." Baglini v. Lauletta, 338 N.J. Super. 282, 293-94 (App. Div. 2001) (internal quotations and citations omitted). Unlike a malicious prosecution claim, which

5

concerns the motives for initiating process, an abuse of process claim must arise from conduct that occurred after process was initiated.  The New Jersey Supreme Court has explained the distinction between these two conceptually similar causes of action:

> An action for malicious abuse of process is distinguished from an action for malicious use of process in that the action for abuse of process lies for the improper, unwarranted and perverted use of process after it has been issued while that for the malicious use of it lies for causing process to issue maliciously and without reasonable or probable cause. Thus it is said, in substance, that the distinction between malicious use and malicious abuse of process is that the malicious use is the employment of process for its ostensible purpose, although without reasonable or probable cause, whereas the malicious abuse is the employment of a process in a manner not contemplated by law.

Ash v. Cohn, 119 N.J.L. 54, 58 (1937); Nieves v. Ortiz, No. 06-5206, 2008 U.S. Dist. LEXIS 63623, 28-30 (D.N.J. Aug. 20, 2008) ("An abuse of process claim does not turn on whether the process was legitimately or illegitimately initiated, but rather on whether after the initiation, it was used for some improper purpose.").

Plaintiff leaves the contours of his allegations vague.  From what I can glean from Plaintiff's opposition and complaint, Plaintiff believes the Defendants contrived allegations of Esposito resisting arrest to conceal their allegedly abusive actions, and to support their artificial charge, the Officers made false statements in their reports, at their depositions, and during their testimony.  Defendants argue that no evidence exists to support these allegations.  Instead, Defendants say that after Plaintiff's arrest, they prepared charges and reports in the normal course and provided sworn testimony consistent with their reports and recollections as they would for any other matter.  Def. Reply, at 3-4.  Plaintiff raises serious charges, ones the Court does not take lightly, but Plaintiff has failed to present even a "scintilla of evidence" in support of his claim, let alone material issues of fact.

According to Plaintiff, the Officers committed "further acts" by allegedly making "false

representations of fact in their reports, again under oath during municipal court testimony, and again under oath during their deposition testimony in order to justify the arrest and assault of the plaintiff." Pl. Opp., at 10. These are not "further acts" as understood in the context of an abuse of process claim. Anything that occurred before Esposito was charged is irrelevant to my analysis of malicious abuse of process. While it is true that the Officers testified after charges were brought against Esposito, the testimony referenced by Plaintiff focuses entirely on whether the Officers had grounds to arrest Esposito and their conduct in arresting him. These allegations could potentially form the basis for a false arrest or malicious prosecution claim, both of which Plaintiff correctly recognizes are untenable here. Plaintiff cannot now bootstrap those allegations to manufacture an abuse of process claim. Even if I were to consider the Officers' municipal court testimony properly cognizable as "further acts" for purposes of bringing an abuse of process claim, Plaintiff has not attached the court transcript or cited to any actual testimony the Officers gave at Plaintiff's trial. Indeed, Plaintiff does not give any specific, meaningful examples of any actual false statements or perjured testimony made in connection with Plaintiff's underlying case. Instead, Plaintiff cites to deposition testimony the Officers provided in connection with *this* case. See Exhibits G and H attached to Mallon Certification. Whatever the Officers have done or said in relation to this case cannot, by definition, constitute "further acts" for an abuse of process in another case. "Process is not abused unless after its issuance the defendant reveals an ulterior purpose he had in securing it by committing *further acts whereby he demonstrably uses the process* as a means to coerce or oppress the plaintiff." Ruberton v. Gabage, 280 N.J. Super. 125, 130 (App. Div. 1995) (emphasis added) (internal quotations omitted). The Defendants could not and were not using process in Plaintiff's criminal trial by giving testimony in this civil case.

7

To the extent Plaintiff implies that Defendants' deposition testimony reflects the testimony they gave it trial, the Court still finds there is no genuine issue of material fact that Defendants gave any false statements.[3]  See, e.g., Pl. Opp., at 7 (stating what "Defendant Nelson admitted at trial…" and quoting Nelson's deposition transcript).  The only evidence Plaintiff alleges that shows Defendants made false representations or committed perjury rests on footage from the surveillance video.  Since Plaintiff relies on the surveillance video and indeed attaches it to his motion, I have carefully reviewed this video.[4]  It shows Plaintiff's dispute with the pharmacist, the pharmacist calling the police, Plaintiff waiting several minutes with his arms folded until the Officers arrive, Plaintiff and the pharmacist speaking with the Officers, separately and together, then Defendants removing Plaintiff from the store holding his arm.  Pl. Opp., 10; Exhibit I to Mallon Certification ("Surveillance Video").  The Defendants made statements during their depositions and allegedly during Plaintiff's municipal criminal trial that Plaintiff was "flailing his arms," "arguing with [the pharmacist]," "angry," and "yelling."  Pl. Opp., 4; Exhibits G and H to Mallon Certification.   Plaintiff argues that the surveillance video contradicts this testimony and instead shows Plaintiff calmly waiting with his arms folded.  This is the proof, says Plaintiff, that Defendants are lying.  Plaintiff argues this is only one of "many, many examples" of such inconsistencies, but this is the only one that he details and the only one upon which he premises his argument.

I find nothing in the video to support Plaintiff's allegations.  At times, Plaintiff appears

---

[3] Plaintiff never actually makes such an argument and rather refers to the Defendants' deposition testimony given in this matter at times as Defendants' trial testimony given in Plaintiff's criminal case.  This is improper.  It is Plaintiff's obligation to show a genuine issue of fact by bringing forth requisite evidence, not by referring to it obliquely and implying what that evidence may represent.  Plaintiff should have provided the Court with excerpts from the actual municipal court transcript if he intended to rely on it.

[4] The Court notes that while it resolves all factual disputes in favor of Plaintiff, the Court will not draw inferences that contradict the events depicted in the video.  See Scott v. Harris, 550 U.S. 372, 380-81 (2007); Ference v. Twp. of Hamilton, 538 F. Supp. 2d 785, 790 (D.N.J. 2008).

8

very calm, waiting patiently; at other times, he is quite agitated, both when talking to the pharmacist and when talking to the Officers. For example, from time 18:28 to 20:44 of the surveillance video, Esposito is talking to the Officers and is almost continuously moving his arms about, at times vigorously, and pointing to what appears to be his prescription and then at the pharmacist. Whether this was "flailing his arms" about or merely gesticulating for effect is an issue of semantics, but it is not a genuine issue of fact.[5] Plaintiff also refers to the police report, albeit generally, and attaches it to his opposition. Exhibit K to Mallon Certification. I have reviewed the report and find no inconsistencies between the report and the Officers' testimony given in this matter or the surveillance video. No reasonable juror could find for Plaintiff on the evidence Plaintiff offers because it fails to demonstrate that Defendants made misrepresentations.

Second, even if the Defendants gave testimony inconsistent with the video, Plaintiff has not brought forth any evidence of the Defendants' illegitimate motivation, beyond an amorphous and inadequate allegation that the Defendants intended to protect their own interests. Pl. Opp., at 10. Plaintiff does not explain what interest the Officers hoped to protect or how they intended to protect it through their alleged perjury. Without such improper motivation, there can be no abuse of process. "The gist of the tort of malicious abuse of process…is the misuse, or 'misapplying process justified in itself for an end other than that which it was designed to accomplish. The purpose for which the process is used, once it is issued, is the only thing of importance.'" Baglini v. Lauletta, 338 N.J. Super. 282, 293-94 (App. Div. 2001) (quoting Prosser

---

[5] The Court has reviewed the record provided and notes that the Officers also testified in their depositions that Plaintiff's actions in the store made them concerned for the safety of everyone, including other customers. Exhibit G and H to Mallon Certification. But the surveillance video shows a number of other patrons coming in and out of the frame apparently unphased by Esposito's discussion with the Officers and the pharmacist. Nevertheless, Plaintiff does not base his argument on this nor would it alter my holding for the reasons discussed *infra* if he had.

9

& Keeton on Torts § 121 at 897 (5th ed.1984)); see also Tedards v. Auty, 232 N.J. Super. 541, 549 (App. Div. 1989) (explaining process is not abused unless "after its issuance the defendant reveals an ulterior purpose he had in securing it by committing 'further acts' whereby he demonstrably uses the process as a means to coerce or oppress the plaintiff."); Ruberton, 232 N.J. Super., at 130-31 ("In the absence of some coercive or illegitimate use of the judicial process there can be no claim for its abuse."). Plaintiff's conclusions rely entirely on his own speculation. Such unsupported allegations, by themselves, are not enough to prevent summary judgment from being granted. Podobnik v. United States Postal Serv., 409 F.3d 584, 594 (3d Cir. Pa. 2005) ("To survive summary judgment, a party must present more than just "bare assertions, conclusory allegations or suspicions….") (internal citations and quotations omitted); Hickson v. Marina Assocs., 743 F. Supp. 2d 362, 373 (D.N.J. 2010).

Moreover, Plaintiffs' allegations that Defendants committed perjury at their municipal court trial, even if true, cannot form the basis of an abuse of process claim as the Officers are immune from civil liability for giving testimony.[6] The United States Supreme Court, in Briscoe v. LaHue, explained:

> It is equally clear that § 1983 does not authorize a damages claim against private witnesses on the one hand, or against judges or prosecutors in the performance of their respective duties on the other. When a police officer appears as a witness, he may reasonably be viewed as acting like any other witness sworn to tell the truth – in which event he can make a strong claim to witness immunity; alternatively, he may be regarded as an official performing a critical role in the judicial process, in which event he may seek the benefit afforded to other governmental participants in the same proceeding. Nothing in the language of the statute suggests that such a witness belongs in a narrow, special category lacking protection against damages suits.

Briscoe v. LaHue, 460 U.S. 325, 335-36 (1983); Blacknall v. Citarella, 168 Fed. Appx. 489, 492

---

[6] This is not to say that police officers can escape liability for falsifying or omitting evidence or tampering with the judicial process in other ways. But the only support Plaintiff relies on is that allegedly perjurious statements made by the Officers conflict with the surveillance video.

(3d Cir. 2006) ("Moreover, it is well-settled that police officers are absolutely immune from § 1983 suits for damages for giving allegedly perjured testimony at a criminal trial.").[7] This district has applied Briscoe's holding to matters involving similar allegations of an abuse of process. Dunne v. Twp. of Springfield, No. 08-5605, 2011 U.S. Dist. LEXIS 9705, *26-27 (D.N.J. Jan. 31, 2011) ("The Court is not persuaded that an officer's [allegedly false] testimony about what he believed he heard during a traffic encounter constitutes 'further acts' that would support a malicious abuse of process claim."); Mosley v. Del. River Port Auth., No. 99-4147, 2000 U.S. Dist. LEXIS 22402 (D.N.J. Aug. 7, 2000) ("For the purposes of an abuse of process claim, 'process' does not include false testimony…The tort of abuse of process does not arise where a person simply makes comments that may have themselves been defamatory or unethical within a process legitimately conceived in the hopes of succeeding in obtaining the very thing for which the person brought the process in the first place.").

The Supreme Court, in Briscoe, recognized the potential harm arising from its holding, but struck the balance firmly in favor of insulating police officers from civil liability in such situations:

> There is, of course, the possibility that, despite the truthfinding safeguards of the judicial process, some defendants might indeed be unjustly convicted on the basis of knowingly false testimony by police officers. The absolute immunity for prosecutors recognized in Imbler bars one possible avenue of redress for such defendants. Similarly, in this case, the absolute witness immunity bars another possible path to recovery for these defendants. But we have recognized, again and again, that in some situations, the alternative of limiting the official's immunity would disserve the broader public interest. As Judge Learned Hand

---

[7] The New Jersey State Supreme Court has reached the same result. "A statement made in the course of judicial, administrative, or legislative proceedings is absolutely privileged and wholly immune from liability. That immunity is predicated on the need for unfettered expression critical to advancing the underlying government interest at stake in those settings." Erickson v. Marsh & McLennan Co., 117 N.J. 539, 563 (1990); see also Ruberton, 232 N.J. Super. at 132) (finding that even if defendant's attorney's "conduct or statements during the conference [were] otherwise tortious or violated ethical standards, [that] does not mean that he misused 'process' for a corrupt purpose").

11

wrote years ago:

> As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. Gregoire v. Biddle, 177 F.2d 579, 581 (CA2 1949), cert. denied, 339 U.S. 949 (1950).

Briscoe, 460 U.S. at 344. Thus, even if Plaintiff was subjected to an artificial charge of resisting arrest, improperly supported by false statements and perjured testimony, Plaintiff cannot recover via a claim of abuse of process.[8] Plaintiff relies on Groman v. Township of Manalapan, 47 F.3d 628 (3d Cir. 1995), to argue that "conflicting testimony" can give rise to a genuine issue of material fact. That is true as a general matter, but conflicting testimony is wholly separate from the issue of perjury. In Groman, the court merely held that there was a material issue of fact, based on the differing testimony between the police officer and the plaintiff, about whether the officer's reaction was reasonable or constituted excessive force and therefore summary judgment was inappropriate. Id. at 634. Groman is inapposite both on the law and on its facts.

Defendants also argue that Plaintiff's abuse of process claim should be dismissed based on the Officers' qualified immunity. Having decided that no genuine issues of material fact exist to support Plaintiff's abuse of process charge, the Court need not reach the issue of whether qualified immunity applies.

After review of the parties' briefs and the relevant record, and viewing all facts and reasonable inferences in light most favorable to Plaintiff, this Court concludes that there are no

---

[8] While this result may seem harsh or likely to work an injustice, there are other avenues for redress and other factors that prevent officers from taking unfair advantage of their absolute civil immunity. For example, a criminal conviction likely will not stand if it is based on an officer's perjured testimony. And any officer who chooses to commit perjury because he can escape civil liability, still exposes himself to severe criminal penalties and professional ruin. Our adversarial system, despite its purported flaws, manages to do a worthy job of eliciting truth and preventing perjury from any witness.

genuine issues of material facts regarding Plaintiff's federal and state law claims for malicious abuse of process. Accordingly, summary judgment is granted on Counts Three and Nine.

### b. Intentional Infliction of Emotional Distress

Defendants also argue there is no issue of fact regarding Plaintiff's claim that the Officers intentionally inflicted emotional distress. To prevail on such a claim: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265, 1273 (3d Cir. 1979). Police officers are not immune from claims of intentional infliction of emotional distress under New Jersey law. N.J. Stat. Ann. § 59:3-3 (public employees are only exempt from liability for the good faith execution or enforcement of any law); Gattas v. City of Jersey City, No. 07-4242, 2010 U.S. Dist. LEXIS 20590 (D.N.J. Mar. 5, 2010).

Defendants have not moved for summary judgment on Plaintiff's claims of excessive force or assault and battery, which allege that Defendants engaged in intentional and extreme conduct. Plaintiff has put forth evidence that he sustained injuries and required medical care due to his arrest. Exhibits C, D, and L to Mallon Certification. Defendants do not refute this evidence as it pertains to Plaintiff's excessive force and assault and battery charges, which are not at issue here. Based on this and viewing the facts and their associated inferences in a light most favorable to Plaintiff, there could be material issues of fact regarding (1) whether Defendants intended to inflict emotional distress on Plaintiff; (2) whether Defendants' conduct was "extreme and outrageous;" and (3) whether Defendants' actions were the cause of Plaintiff's distress. But because Plaintiff has failed to demonstrate that a genuine issue of material fact exists with respect to the fourth element—whether Esposito suffered "severe" emotional distress

13

as defined by New Jersey law—summary judgment is appropriate.

Plaintiff's complaint alleges that "Plaintiff sustained severe emotional distress." Compl. ¶ 84. And in his opposition, Plaintiff states that he "clearly suffered distress, both physically and mentally as a result." Pl. Opp., 14. But Esposito never explains what emotional distress he actually suffered. Mere allegations are not enough to create a triable issue of fact. See Mardini v. Viking Freight, Inc., 92 F. Supp. 2d 378, 385 (D.N.J. 1999) (dismissing intentional infliction of emotional distress claim because plaintiff had not alleged what "specific ailments afflicted her"). Moreover, I have reviewed the record presented by the parties, their certifications and exhibits attached, and their respective statement and counter statements of facts, and I find nothing that even discusses any emotional or mental distress suffered by Plaintiff let alone any evidence that supports such an affliction.[9] Rather, Plaintiff's evidence focuses on the physical injuries he suffered immediately after his arrest, which he documents with photographs, medical records, and reports. This evidence may be relevant to his remaining claims of excessive force and assault and battery, but it is not relevant to his claim for intentional infliction of emotional distress.

The New Jersey Supreme Court has said that "the emotional distress suffered by the plaintiff must be so severe that no reasonable man could be expected to endure it." Buckley v. Trenton Sav. Fund Soc., 111 N.J. 355, 366 (N.J. 1988). In Buckley, the Court found that a plaintiff suffering from "aggravation, embarrassment, an unspecified number of headaches, and the loss of sleep" had not shown sufficient distress, as a matter of law, to rise to the necessary level of severity. Id. In Gattas v. City of Jersey City, the plaintiff brought a claim for intentional

---

[9] Plaintiff states in his opposition that he "is now mistrustful of police." Pl. Opp., at 3. It is not clear if he means this to be a form of emotional distress. This by itself is does not rise to the level of severe emotional distress. If it were, then a significant portion of the population would be suffering from severe emotional distress.

14

infliction of emotional distress due to a police officer's allegedly aggressive conduct in arresting him. Gattas, 2010 U.S. Dist. LEXIS 20590, *6-7. The district court granted summary judgment because plaintiff offered no evidence in support of his statements that he was "distressed, anguished, humiliated, and troubled by the officer's actions." Id. at *23-24 ("Gattas offers no evidence of his emotional distress, other than the mere statements...."); see also Iglesia v. City of Glassboro, No. 04-3034, 2007 U.S. Dist. LEXIS 42758, 16-18 (D.N.J. June 13, 2007) (granting summary judgment on plaintiff's intentional infliction claim because even if police conduct amounted to excessive force, he "provided no compelling evidence that [his] ailments rise to the level of severity recognized under New Jersey law"). Here, too, Plaintiff only offers mere statements and allegations. This is not to say that Esposito's claim fails because he has not brought forward medical evidence. "[N]either medical treatment, nor expert testimony is necessary in order for a plaintiff to prevail on an [intentional infliction of emotional distress] claim." Kounelis v. Sherrer, 529 F. Supp. 2d 503, 532 (D.N.J. 2008). Rather, Esposito's claim fails because he has not provided the court with *any* evidence from which a reasonable jury could find severe emotional distress.[10] Therefore, viewing all facts and reasonable inferences in a light most favorable to Plaintiff, this Court concludes that there is no genuine issue of material fact regarding Plaintiff's claim for intentional infliction of emotional distress. Accordingly, summary judgment is granted on Count Eleven.

---

[10] Nor do Plaintiff's allegations meet the requirements of the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq. In particular, N.J.S.A. 59:9-2(d) prohibits an award "against a public entity or public employee for pain and suffering resulting from any injury," unless the injury results in "permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $ 1,000.00." There is further question, too, whether Plaintiff has complied with the applicable notice requirements of the Act. N.J.S.A. 59:8-3 ("No action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter.").

## IV.     CONCLUSION

Little Egg Harbor Defendants motion for summary judgment on Counts Six and Twelve is granted as Plaintiff does not oppose that motion.  Defendants Nelson and Hogan's motion for partial summary judgment on Counts Two, Four, Eight, and Ten is granted as Plaintiff does not oppose those aspects of Defendants motion.  Defendants' Motion for summary judgment on Counts Three, Nine, and Eleven is granted for the reasons above.  An order will be entered consistent with this Opinion.


Dated: April 27, 2012                                      /s/    Freda L. Wolfson
                                                                        Honorable Freda L. Wolfson
                                                                        United States District Judge